1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENITO AGUILAR TRUJILLO,<br><br>                      Petitioner,<br><br>   v.<br><br>KRISTI NOEM, *et al.*,<br><br>                    Respondents. | Case No. 26-cv-00268-BAS-VET<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1)** |

Petitioner Benito Aguilar Trujillo filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, claiming he was improperly detained without bond. (ECF No. 1.) He requests that he be released or, alternatively, granted a bond hearing within 7 days. (*Id.*) The Government responded, acknowledging that Petitioner is entitled to a bond hearing pursuant to a ruling in the Central District of California in *Maldonado Bautista v. Noem*, __ F. Supp. 3d __, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), but requesting 14 days to hold the hearing. (ECF No. 4.) For the reasons stated below, the Court **GRANTS** the Petition and orders that Petitioner be given a bond hearing before an Immigration Judge within 14 days of today's date.

26cv0368

## I.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  "The traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A court may grant a writ of habeas corpus to a petitioner who demonstrates he or she is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  The writ is available to non-citizens detained within the United States.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  Since Petitioner is in custody, and since he is seeking release from custody, he has standing to pursue this Petition.

## II.    STATEMENT OF FACTS

Petitioner has lived in the United States since the late 1980s when he was issued an agriculture and employment authorization to enter the United States.  (Petition ¶ 60, ECF No. 1.)  He has no criminal record, has been legally employed, has a valid Social Security number, and has consistently paid taxes.  (*Id.* ¶ 32.)  He has two adult United States citizen children and lives with his partner who is a legal permanent resident.  (*Id.*)  He was arrested by Immigration and Customs Enforcement ("ICE") in the interior of the United States, not at the border or a Port of Entry.  (*Id.* ¶ 68.)  Petitioner has been denied a bond hearing pursuant to *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  (*Id.* ¶ 64.)  Petitioner requests that he be immediately released or alternatively granted a bond hearing before an Immigration Judge.  (*Id.*)

The Central District of California has certified a class of which Petitioner is a member and essentially overruled *Yajure Hurtado*.  *See Maldonado Bautista*, 2025 WL 3678485.  This Court agrees with the Central District of California, with respect to this Petitioner, and finds that application of *Yajure Hurtado* violates federal law.

## III.    ANALYSIS

### A.    Jurisdiction

In the past, the Government has argued that 8 U.S.C. §§ 1252(g) and 1252(b)(9) strip this Court of jurisdiction.  Section 1252(g) states that "no court shall have jurisdiction to

hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

The general rule is to "'resolve any ambiguities in a jurisdiction-stripping statute [such as Section 1252(g)] in favor of the narrower interpretation,' and by the 'strong presumption in favor of judicial review.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 995 (9th Cir. 2025) (quoting *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018)). Thus, the Supreme Court has ruled Section 1252(g) applies only to three discrete actions: commencing proceedings, adjudicating cases, or executing removal orders. *Reno v. Am.- Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). "Instead of 'sweep[ing] in any claim that can technically be said to arise from the three listed actions,' the provision 'refers to just those three specific actions themselves.'" *Ibarra-Perez*, 154 F.4th at 995 (alteration in original) (quoting *Jennings v. Rodriguez,* 583 U.S. 281, 294 (2018)). "There are of course many other decisions or actions that may be part of the deportation process . . ." that are not one of these three. *See Reno*, 525 U.S. at 482 (listing possibilities). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez*, 154 F.4th at 997.

In this Petition, Petitioner is not contesting the commencement or adjudication of removal proceedings against him, nor is he raising an issue with respect to the execution of removal. His detention pursuant to 8 U.S.C. § 1225(b)(2) may be during, but is nonetheless independent of, the removal proceedings. Thus, this Court is not stripped of jurisdiction by Section 1252(g).

Section 1252(b)(9) states, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section."

"[C]laims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016).

26cv0368

Thus, in *Nielsen v. Preap*, 586 U.S. 392 (2019), the Supreme Court held Section 1252(b)(9) inapplicable when the petitioners were not asking for review of an order of removal, were not challenging the decision to detain them in the first place or to seek removal, and were not challenging any part of the process by which removability would be determined. *Id.* at 402 (citing *Jennings*, 583 U.S. at 294).

Here, Petitioner does not challenge the Government's authority to remove him from the United States in this Petition. Instead, he challenges his classification under Section 1225(b)(2) instead of Section 1226(a) and the BIA's decision that Immigration Judges lack authority to provide a bond under Section 1225(b)(2). Thus, Section 1252(b)(9) does not provide a jurisdictional bar.

**B.    Applicability of Section 1225(b)(2) Versus Section 1226(a)**

In *Yajure Hurtado*, 29 I. & N. Dec. 216, the BIA ruled that an individual such as Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). However, this Court agrees with the multitude of cases that have concluded that 8 U.S.C. § 1226(a) is the appropriate standard for bond in Petitioner's circumstance and that applying Section 1225 "(1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (citing cases).

"We begin, as always, with the text." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017). Section 1225(b)(2)(A) applies to an applicant "seeking admission" to the United States, whereas Section 1226(a) applies to individuals who have been arrested "on a warrant issued by the Attorney General." 8 U.S.C. §§ 1225(b)(2)(A), 1226(a). "Seeking," as noted by other courts, "means 'asking for' or 'trying to acquire or gain.'" *Lepe*, 801 F. Supp. 3d at 1113 (citing Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking). "And the use of a present participle, 'seeking,' necessarily implies some sort of present-tense action." *Id.* (citation modified).

Respondents point to Section 1225(a)(1), which states, "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." However, if Section 1225 was intended to apply to all applicants for admission, "there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025); *accord Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (reasoning "while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,'" he is not "an 'applicant for admission' who is 'seeking admission'").

Furthermore, Respondents' interpretation ignores the statutory scheme. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Lepe*, 801 F. Supp. 3d at 1114 (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). "Section 1225 'authorizes the Government to detain certain aliens *seeking admission* into the country,' whereas section 1226 'authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings.'" *Id.* (quoting *Jennings*, 583 U.S. at 287). This is reinforced by the title of Section 1225: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. "'Inspection' is a process that occurs at the border or other ports of entry." *Lepe*, 801 F. Supp. 3d at 1114 (citing *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021)).

Petitioner has been living in the United States since the late 1980s. He is not at the border or a Port of Entry seeking admission to the United States. Hence, Section 1226(a) is the applicable statute.

To the extent the addition of Section 1225(a) renders the two statutes ambiguous or unclear as to which section applies, the Court turns to principles of statutory construction. *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025) ("[E]ven when a statute is ambiguous or internally contradictory, courts must 'use every tool at their

disposal to determine the best reading of the statute.'" (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024))). "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rodriguez*, 779 F. Supp. 3d at 1258 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

Section 1226 carves out a statutory category of non-citizens who, despite being arrested while already in the country, may not be released because of their criminal or terrorist activities. 8 U.S.C. § 1226(c). If, as Respondents argue, all non-citizens arrested while already in this country are subject to mandatory detention under § 1225, there would be no need to carve out an exception for those who had committed criminal or terrorist activities. *See Rosado v. Figueroa*, No. CV 25-2157-DHX-DLR (CDB), 2025 WL 2337099, at *9 (D. Ariz. Aug. 11, 2025) (reasoning that if Section 1225's "mandatory detention provisions apply to all noncitizens present in the United States who have not been admitted, it would render superfluous provisions of § 1226 that apply to certain categories of inadmissible noncitizens"); *Rodriguez*, 779 F. Supp. 3d at 1258 (noting that if the court were to adopt a reading of Section 1225 advanced by the BIA, it would render significant portions of Section 1226(c) meaningless). To avoid rendering Section 1226(c) completely meaningless, the Court finds non-citizens arrested on a warrant in the interior of the United States are subject to discretionary release on bond under Section 1226(a), not mandatory detention under Section 1225(b)(2)(A).

In addition, "the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Rosado*, 2025 WL 2337099, at *10 (citation modified) (quoting *Loper Bright*, 603 U.S. at 386). "Until this year, DHS has applied section 1226(a) and its regime of discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation—a practice codified by regulation." *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 929 (N.D. Cal. 2025) (citation modified); *see also* Inspection & Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

26cv0368

Against this backdrop, Congress adopted the Laken Riley Act, adding Section 1226(c)(1)(E), which mandates detention for additional categories of criminal aliens. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Rodriguez*, 779 F. Supp. 3d at 1259 (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995), *abrogated on other grounds by Riley v. Bondi*, 606 U.S. 259, 261 (2025)). "When Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' courts 'generally presume the new provision should be understood to work in harmony with what has come before.'" *Id.* (quoting *Monsalvo Velazquez v. Bondi*, 604 U.S. 712, 725 (2025)).

The longstanding practice of DHS applying Section 1226 to those arrested in the interior of the United States supports the finding that this practice was the best reading of the statute. This conclusion is particularly true because adopting Respondents' interpretation would result in the recently enacted Laken Riley Act being completely meaningless and unnecessary.

Statutory interpretation supports that Section 1226(a), not Section 1225(b)(2)(A), applies to Petitioner's immigration detention. Because the BIA's decision binding Immigration Judges incorrectly provides that Petitioner is subject to mandatory detention with no individualized bond determination, Petitioner is being held in violation of federal law. Hence, his Petition is **GRANTED**.

## IV.    CONCLUSION

For the reasons stated above, Petitioner Benito Aguilar Trujillo's Petition for Writ of Habeas Corpus is **GRANTED**. The Court issues the following writ:

> The Court **ORDERS** a bond hearing before an Immigration Judge for Benito Aguilar Trujillo (A#221-420-389) within 14 days of the date of this Order. His bond hearing shall be governed by 8 U.S.C. § 1226(a), not § 1225(b)(2).

The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

**DATED: January 30, 2026**

Hon. Cynthia Bashant, Chief Judge
United States District Court

26cv0368